# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT CARLYLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-cv-00389-BAJ-RLB |
| v. | ) | |
| | ) | |
| | ) | |
| AKORN, INC., JOHN N. KAPOOR, | ) | |
| KENNETH S. ABRAMOWITZ, | ) | |
| ADRIENNE L. GRAVES, RONALD M. | ) | |
| JOHNSON, STEVEN J. MEYER, TERRY | ) | |
| A. RAPPUHN, BRIAN TAMBI, and | ) | |
| ALAN WEINSTEIN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION SEEKING A PRELIMINARY INJUNCTION AND EXPEDITED DISCOVERY

Dated: June 26, 2017

**OF COUNSEL:**

**BROWER PIVEN**
 A Professional Corporation
Daniel Kuznicki
(to seek *pro hac vice* admission)
475 Park Avenue South, 33rd Floor
New York, New York 10016
Telephone: 212-501-9000
Cellular: 347-690-0692
kuznicki@browerpiven.com

**KAHN SWICK & FOTI, LLC**
Lewis Kahn, Esq. (23805)
206 Covington Street
Madisonville, La 70447
Telephone:     (504) 455-1400
Cellular:          (504) 301-7900
Facsimile:       (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Plaintiff*

**ORAL ARGUMENT REQUESTED**

## I.    INTRODUCTION

Plaintiff,[1] through his undersigned counsel, respectfully submits this Memorandum of Law in support of his motion to preliminarily enjoin the stockholder vote on the proposed transaction challenged in the above-captioned action scheduled for July 19, 2017 and for expedited discovery.

On April 24, 2017, Akorn, Inc.'s ("Akorn" or the "Company") Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Fresenius Kabi AG ("Fresenius Kabi") and its wholly-owned subsidiary, Quercus Acquisition, Inc. ("Merger Sub" and, together with Fresenius Kabi, "Fresenius"). Pursuant to the terms of the Merger Agreement, shareholders of Akorn will receive $34.00 in cash for each share of Akorn common stock.

On May 22, 2017, as amended on June 15, 2017, defendants filed a proxy statement (the "Proxy" or "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction (defined below). *See* Ex. 1 to the Declaration of Lewis S. Kahn in Support of Plaintiff's Motion Seeking a Preliminary Injunction and Expedited Discovery ("Decl."). As set forth below and in his Complaint, plaintiff alleges that the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, Plaintiff alleges that Defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement, and plaintiff respectfully requests that the Court

---

[1]    In addition to this Action, five other stockholder actions arising out of the same transaction and seeking the same relief have been filed in this court: *Berg v. Akorn, Inc. et al.*, Case No. 3:17-cv-00350-BAJ-RLB, *Alcarez v. Akorn, Inc. et al.*, Case No. 3:17-cv-00359-BAJ-RLB, *House v. Akorn, Inc., et al.*, Case No. 3:17-cv-00367-BAJ-EWD, *Harris v. Akorn, Inc., et al.*, and *Pullos v. Akorn, Inc., et al.*, Case No. 3:17-cv-00395-BAJ-RLB. Plaintiffs in those five actions join in this Motion and the requested relief sought herein. Additionally, plaintiffs in all of the actions are seeking consolidation of the six related cases.

enjoin the July 19, 2017 stockholder vote until defendants disclose the material information sought herein.

Given the impending stockholder vote, time is of the essence. Accordingly, Plaintiff seeks an order: (i) preliminarily enjoining Defendants from proceeding with the impending stockholder vote and (ii) permitting limited expedited discovery.

## II.    STATEMENT OF FACTS[2]

### A.    Background of the Company and the Proposed Transaction

Akorn is a Louisiana pharmaceutical corporation that develops, manufactures, and markets generic and branded prescription pharmaceuticals and branded as well as private-label over-the-counter ("OTC") consumer health products and animal health pharmaceuticals. ¶2. Akorn specializes in difficult-to-manufacture sterile and non-sterile dosage forms including ophthalmics, injectables, oral liquids, otics, topicals, inhalants, and nasal sprays. It has facilities in several states and foreign countries. *Id.*

On April 24, 2017, Akorn and Fresenius publicly announced they had entered into the Merger Agreement. ¶3. Pursuant to the Merger Agreement, Merger Sub will merge with and into Akorn, with Akorn surviving the merger as a wholly-owned subsidiary of Fresenius Kabi (the "Proposed Transaction"). *Id.* Akorn shareholders will receive $34.00 in cash per share for each share of Akorn common stock they own. *Id.* According to the Company's press release, the Proposed Transaction is valued at approximately $4.3 billion, plus the assumption of approximately $450 million of debt. *Id.* The Proposed Transaction is subject to approval by Akorn shareholders. *Id*

---

[2] Citations to "¶__" refer to paragraphs in plaintiff's Complaint for Violation of the Securities Exchange Act of 1934 (the "Complaint") (Dkt. No. 1). To the extent not otherwise defined here, capitalized terms have the same meaning as in the Complaint. The Parties are defined in paragraphs 11 – 23 of the Complaint.

**B.      Defendants Disseminated a Materially Incomplete Proxy Statement**

On May 22, 2017, as amended on June 15, 2017, defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  ¶ 3.  As alleged in the Complaint and discussed herein, the Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Specifically, the Proxy Statement omits material information regarding Akorn's financial projections, the financial analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), and the background of the Proposed Transaction.  ¶¶ 43-60.  This omitted information, if disclosed, would significantly alter the total mix of information available to Akorn's stockholders.

## ARGUMENT

**I.      PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION**

**A.      The Legal Standard for a Preliminary Injunction**

Pursuant to Rule 65, the Court may enter a preliminary injunction enjoining the stockholder vote on the Proposed Transaction.  "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 385, 101 S. Ct. 1830 (1981).  A party seeking a preliminary injunction must show:

> (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted, and (4) that the grant of an injunction will not disserve the public interest.

*Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006) (internal quotations omitted).  "The absence of an available remedy by which the movant can later recover monetary damages may

be sufficient to show irreparable injury." *Paulsson Geophysical Servs., Inc. v. Sigmar*, 529 F.3d 303, 312 (5th Cir. 2008). The moving party has the burden to demonstrate each of the four requirements before an injunction is granted. *PCI Transp., Inc. v. Fort Worth & Western R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005).

Here, a preliminary injunction is necessary to prevent Defendants from holding the stockholder vote without providing shareholders with material information. The time period in which consideration may be given to Plaintiff's claims is compressed since the Defendants have set the stockholder vote for July 19, 2017. Given the irreparable harm that Plaintiff and the other stockholders of Akorn will suffer if they are forced to cast an uniformed and/or misinformed vote, Plaintiff respectfully moves for a preliminary injunction.

### B.     Plaintiff Has a Substantial Likelihood of Success on the Merits of His Claims

Plaintiff has a substantial likelihood of success on the merits of his claims. Plaintiff alleges that Defendants violated Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 by filing the materially incomplete Proxy with the SEC and asking Akorn shareholders to rely on the information contained therein and vote in favor of the Proposed Merger. Section 14(a)'s "fundamental purpose" (and, indeed, the purpose of the entire Securities and Exchange Act of 1934) is to require "full disclosure" of all material facts. *Santa Fe Industries, Inc., v. Green*, 430 U.S. 462, 478 (1977). Rule 14a-9, adopted to that end, prohibits making a statement in a proxy solicitation which is "false or misleading with respect to any material fact or which omits to state any material fact necessary in order to make the statements therein not misleading . . . ." 17 C.F.R. § 244.14a-9.

The elements of a section 14(a) claim are: (1) defendants misrepresented or omitted a material fact in a proxy statement; (2) defendants acted at least negligently in distributing the

proxy statement; and (3) the false or misleading proxy statement was an essential link in causing the corporate actions." *In re Browning-Ferris Industries, Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 365 (S.D. Tex. 1993) (internal citations omitted).

A company must disclose information in a proxy disseminated to solicit shareholder votes "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). *See also Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991) (explaining that §14 and related rules prohibit solicitation of proxies by means of materially misleading statements or omissions). The Supreme Court has clearly held that if there is any doubt as to the materiality of misstated or undisclosed information, the doubts must be resolved in favor of those the statute is designed to protect, *i.e.,* the stockholders. *See TSC Indus*, 426 U.S. at 448 (*citing Mills*, 90 S.Ct., at 622) (emphasis added).

Here, the second element is clearly established, "[a]s a matter of law, the preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact is sufficient to satisfy the [] negligence standard… a director may be found negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy statement." *Brown v. Brewer*, No. CV06-3731-GHK (SHx), 2010 WL 2472182, at *24 (C.D. Cal. June 17, 2010) (internal quotation marks omitted). *See also Parsons v. Jefferson–Pilot Corp.,* 789 F.Supp. 697, 703 (M.D.N.C.1992) (holding that a director may be found negligent under Section 14(a) for a failure to notice material omissions upon reading a proxy statement).

Similarly, the third element is easily satisfied, as it is indisputable that the Proxy is an "essential link" necessary for the Proposed Transaction to be consummated. *Brown v. Brewer*, No. CV 06-3731-GHK (JTLX), 2008 WL 6170885, at *5 (C.D. Cal. July 14, 2008) (holding that

a proxy is an essential link in the approval of a merger as shareholder approval is required to complete the transaction); *see also In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig.*, 757 F. Supp. 2d 260, 292 n.3 (S.D.N.Y. 2010) (same). Accordingly, the Court need only consider the materiality of the omitted information discussed below.

Here, the Proxy omits material information regarding: (1) Akorn's financial projections; (2) the financial analyses performed by the Company's financial advisor, J.P. Morgan, in support of its fairness opinion; and (3) the background of the Proposed Transaction.

### 1. Akorn's Financial Projections

Financial projections are clearly material and are among the most significant factors relied on by investors in valuing a stock or assessing a potential merger transaction. *Marx v. Computer Scis. Corp.*, 507 F.2d 485, 489 (9th Cir. 1974); *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 203 (Del. Ch. 2007). The full disclosure of the Company's financial projections, which would provide shareholders a complete understanding of the value of their stock, is therefore a critical disclosure in this case. *See Maric Capital Master Fund, Ltd. v. Plato Learning, Inc*., 11 A.3d 1175, 1178 (Del. Ch. 2010) (holding that "management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information."). This is particularly true where, as here, stockholders face a voting decision with respect to the Proposed Transaction that will have the effect of cashing them out of their Akorn holdings forever, a question that requires them to decide whether the Merger Consideration is adequate compensation for losing their share of the Company's future financial returns. *See In re PNB Holding Co. S'holders Litig*., No. 28-N, 2006 WL 2403999, at *15 (Del. Ch. Aug. 18, 2006) ("[R]eliable management projections of the company's future prospects are of obvious materiality to the electorate. After all, the key issue for the stockholders is whether

accepting the merger price is a good deal in comparison with remaining a shareholder and receiving the future expected returns of the company.").

The Proxy discloses some financial projections that Akorn management provided to the Board, J.P. Morgan, and Fresenius Kabi. Proxy at 32-33; ¶¶ 47-48. Although it purports to provide a summary of the March 2017 Management Case for fiscal years 2017 through 2026, the Proxy fails to disclose complete information concerning the substance of the March 2017 Management Case or the assumptions, analysis, projections, or conclusions reflected therein. ¶ 48; Proxy at 32-33. Among other things, according to the Proxy, the projections for fiscal years 2021 through 2026 were prepared "by applying a growth rate determined based on a number of factors to the projected fiscal year 2020 revenue, which growth rate was then decreased year-over-year following fiscal year 2021, and by applying adjustments to EBITDA margin from the projected fiscal year 2020 based on the reasonable judgment of management . . . ." Proxy at 48. The Proxy, however, fails to disclose the basis for that growth rate, the basis for decreasing the growth rate following fiscal year 2021, or the adjustments to EBITDA margin from the projected fiscal year 2020. ¶49. The Proxy also notes that J.P. Morgan reviewed "certain internal financial analyses and forecasts prepared by the management of the Company relating to its business." Proxy at 41. Yet, the Proxy fails to disclose exactly what financial analyses and forecasts the Company's management prepared or the substance of those analyses and forecasts. Without these disclosures, cherry-picking the disclosed projections materially misleads Akorn stockholders.

This information is plainly material because stockholders would find it important to understand the Company's standalone prospects in deciding whether or not to approve the Proposed Transaction. Further, this information must be disclosed because it was relied upon by

J.P. Morgan to perform their valuation analyses. By omitting the financial projections, Defendants have materially misled stockholders as to the reliability and basis of the financial advisors' analyses and the true value of the Company itself. *See e.g., Netsmart,* 924 A.2d at 203; *see also Maric Capital Master Fund*, 11 A.3d at 1178 (noting that "management's best estimate of the future cash flow of a corporation that is proposed to be sold in a cash merger is clearly material information" that shareholders ought to have when deciding whether it is in their best interest to accept the proposed merger price); *In re PNB Holding*, 2006 WL 2403999, at *15 ("In the context of a cash-out merger, reliable management projections of the company's future prospects are of obvious materiality to the electorate."); *Sealy Mattress Co. of N.J., Inc. v. Sealy, Inc.*, 532 A.2d 1324, 1339-40 (Del. Ch. 1987) (finding a failure to disclose the company's future prospects, its business plans, or projected revenues or income to be material omissions from the proxy).

In addition, with respect to the November 2016 and March 2017 Management Case, the Proxy fails to provide a reconciliation of all non-GAAP to GAAP metrics for fiscal years 2017 through 2026. Proxy at 47-48; ¶ 51. Specifically, the Proxy discloses and relies upon 2017-2026 projections of EBITDA, EBIT, NOPAT, and Unlevered Free Cash Flow – all non-GAAP financial metrics – without reconciling those measures to the GAAP equivalent metrics. Proxy at 47-48. The failure to provide a GAAP reconciliation of these non-GAAP projections renders them materially incomplete and misleading.

When a company discloses information that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of the non-GAAP metrics to GAAP metrics. 17 C.F.R. § 244.100 (requiring the disclosure of material non-GAAP financial measures be accompanied by an identification and presentation of the most

directly comparable GAAP measure, and a reconciliation of the non-GAAP measure to the comparable GAAP measure by a clearly understandable method).[3]

Item 10(e)(1)(i)(B) of SEC Regulation S-K further states that, with regard to forward-looking information such as financial projections, *any* reconciling metrics that are available without unreasonable efforts must be disclosed. 17 C.F.R. 229.10(e)(1)(i)(B). Indeed, the SEC has repeatedly emphasized that disclosure of unreconciled non-GAAP projections is inherently misleading, and has therefore heightened its scrutiny of the use of such projections. *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.[4]

---

[3] While 17 C.F.R. § 244.100(d) provides for a carve-out for certain communications relating to business combinations, that carve out does **not** apply to "registration statements, proxy statements and tender offer materials." S.E.C. Comp. & Disc. Interps., Question 101.01 (Jan. 11, 2010) www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm. At best, the carve-out for business combinations applies only to information contained in a report or opinion provided by a financial advisor to a target company, and not a target company's financial data that was independently relied on by the target board. 17 C.F.R. § 229.1015.

[4] The former chair of the SEC, Mary Jo White, stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures implicates the centerpiece of the SEC's disclosures regime. "In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. Recently, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees should oversee their company's use of non-GAAP measures and disclosures." *See* Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), www.sec.gov/news/speech/chair-white-icgn-speech.html#_ftnref38 (emphasis added) (footnotes omitted).

Even more to the point, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics.[5] Specifically, SEC CD&I 102.07 states with regard to "free cash flow" – one of the non-GAAP metrics at issue here – that "a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used." *See* S.E.C. Comp. & Disc. Interps., Question 102.07 (May 17, 2016https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

On page 48 of the Proxy, the Company claims that GAAP reconciliation cannot be made available without unreasonable efforts. This is a misstatement. Akorn regularly reconciles non-GAAP financial measures, including EBITDA, to GAAP net income in its earnings press releases prepared for investors. In fact, the Company performed line-item GAAP reconciliations in all of the earnings releases available on its website. See e.g,. http://investors.akorn.com/phoenix.zhtml?c=78132&p=irol-newsArticle&ID=2250528. The Company's conclusory statements invoking the "unreasonable efforts" exception to mandatory GAAP reconciliation also flies in the face of SEC regulations that prohibit the use of vague and conclusory assertions. *See e.g.,* 17 C.F.R. §229.1012(a)-(b).

Akorn's stockholders are entitled to the Company's best and most accurate estimates of its future returns – including reconciliation of non-GAAP metrics – as "projections of this sort are probably among the most highly-prized disclosures by investors." *Netsmart*, 924 A.2d at 203.

## 2. Financial Analyses Performed by J.P. Morgan

The Proxy also omits material information regarding the financial analyses performed by

---

[5] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

J.P. Morgan in support of its fairness opinion. As a general rule, "stockholders are entitled to a fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of their board as to how to vote on a merger or tender rely." *In re Pure Res., Inc. S'holders Litig.*, 808 A.2d 421, 449 (Del. Ch. 2002). Financial advisors' "analyses . . . usually address the most important issue to stockholders – the sufficiency of the consideration being offered to them for their shares in a merger or tender offer." *Id*. It is well-settled that, "when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed." *Netsmart*, 924 A.2d at 203-04.

For example, the Proxy refers to "an illustrative financial analysis of the Company's standalone valuation based on public filings and publicly available equity research" that J.P. Morgan presented to the Board at its meeting on February 17, 2016, after which the Board purportedly concluded "it would be in the best interest of the Company and its shareholders to explore potential strategic alternatives . . . ." Proxy at 26; ¶ 45. The Proxy, however, fails to disclose any information with respect to the substance of J.P. Morgan's analysis of the Company's stand-alone valuation. ¶ 45. Nor does the Proxy disclose exactly why the Board determined it would be in the best interest of the Company and its shareholders to pursue potential strategic alternatives rather than a stand-alone strategic plan. *Id.*

Here, where few other bidders came forward, these analyses are material and provide a good benchmark by which to judge the fairness of the consideration offered in a proposed transaction. Because "the shareholders have little else then a banker's opinion and the market price of the stock to judge the adequacy of the offer, facts bearing upon a banker's situation that might in other circumstances seem too attenuated to have pertinence, may become material."

*Roberts v. Gen. Instrument Corp.*, C.A. No. 11639, 1990 WL 118356, at *12 (Del. Ch. Aug. 13, 1990). Further information on the methodology is material where, as here, the description of the analysis fails to provide key inputs, assumptions, or outputs of the analyses of Akorn as a stand-alone company. Thus, the details of the analyses of the Company's stand-alone value performed by J.P. Morgan are material to stockholders, and disclosing some, but not all, details misleads shareholders as to the financial advisor's basis for its fairness opinion.

### C. Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

Plaintiff and Akorn's other stockholders will suffer irreparable harm by being forced to vote without the material information referenced above. "An uninformed shareholder vote is often considered an irreparable harm, particularly because the raison d'etre of many of the securities laws is to ensure that shareholders make informed decisions." *Allergan, Inc. v. Valeant Pharms. Int'l, Inc.*, No. SACV 14-1214 DOC(ANx), 2014 U.S. Dist. LEXIS 156227, at *50 (C.D. Cal. Nov. 4, 2014). Indeed, as another U.S. District Court stated in an analogous context:

> The Supreme Court has recognized that use of solicitation which is materially misleading poses the kind of irreparable injury to stockholders which can justify injunctive relief prior to a shareholder's meeting…irreparable injury would occur absent an injunction prohibiting the voting of proxies based upon false and misleading information. At a minimum, the free and intelligent voting rights of plaintiff's shareholders will be forfeited if such votes are exercised based upon false or misleading information. Monetary damages cannot restore the right of shareholders to effectively exercise their corporate suffrage rights.

*Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1149-50 (D. Kan. 2001) (internal quotation marks omitted).

Courts have found this exact threat of irreparable harm sufficient to enjoin a proposed merger until defendants provide additional information concerning the transaction to shareholders. *Id.*; *St. Louis Police Ret. Sys. v. Severson*, No. 12-CV-5086 YGR, 2012 U.S. Dist.

LEXIS 152392, at *16-17 (N.D. Cal. Oct. 23, 2012) ("disclosure deficiencies cannot be remedied effectively by an 'after-the-fact damages' case. Thus, 'it is appropriate for the court to address material disclosure problems through the issuance of a preliminary injunction that persists until the problems are corrected.'") (quoting *In re Staples, Inc. Shareholders Litig.*, 792 A.2d 934, 960 (Del. Ch. 2001)); *Maric*, 11 A.3d at 1176 (enjoining merger "until corrective disclosures are made on three issues in the corporation's proxy statement.") Accordingly, Plaintiff has established that he "would suffer irreparable injury in the absence of injunctive relief designed to remedy any false or misleading information in defendant's Proxy Statement[]." *See Lone Star Steakhouse & Saloon, Inc.*, 148 F. Supp. 2d at 1150.

### D. The Threatened Injury Outweighs the Threatened Harm to the Defendants, and a Preliminary Injunction is in the Public Interest

Absent injunctive relief, plaintiff and Akorn's stockholders will be forced to make a decision regarding the Proposed Transaction without the material information identified above. The harm to defendants, if any, that would flow from a limited injunction is *de minimis* when compared to concern over the possibility that stockholders will make an uninformed decision regarding the Proposed Transaction. *Wis. Inv. Bd. v. Bartlett*, 2000 Del. Ch. LEXIS 22, at *8 (Del. Ch. Feb. 9, 2000). Moreover, the stockholder vote could be postponed while leaving ample time for defendants to consummate the Proposed Transaction. Indeed, "when it appears likely that the offer may contain materially misleading statements or omissions as made, the interest of the shareholders and of the public in full disclosure of relevant circumstances renders preliminary injunctive relief an appropriate method of remedying the deficiencies in disclosure before the offer is consummated." *Sonesta Int'l Hotels Corp. v. Wellington Assocs.*, 483 F.2d

247, 250-51 (2d Cir. 1973). Accordingly, the balance of hardships weighs in favor of granting injunctive relief, and injunctive relief is in the public interest.[6]

## II. EXPEDITED DISCOVERY IS NECESSARY AND APPROPRIATE IN THESE CIRCUMSTANCES

### A. Courts Allow Expedited Discovery for Good Cause

Discovery under the Federal Rules of Civil Procedure typically does not commence until after the parties have met and conferred pursuant to Rule 26(f). *See* Fed. R. Civ. P. 26(d). Nevertheless, a court may order discovery to take place in a certain sequence or to specify the time and place for such discovery to occur, should the circumstances warrant such action "for the parties' and witnesses' convenience and in the interests of justice." *S. Filter Media, LLC v. Halter*, No. CIVA 13-116-JJB-RLB, 2014 WL 715727, at *3 (M.D. La. Feb. 21, 2014); *see also* Fed. R. Civ. P. 26(d)(2).

Although the Fifth Circuit has not explicitly adopted a standard to determine whether a party is entitled to expedited discovery, several district courts within the Fifth Circuit, including this Court, have expressly utilized the "good cause" standard when addressing the issue. *See Philip Morris USA Inc. v. Tin's, Inc.*, 2003 WL 22331256, at *1 (M.D. La. Apr. 23, 2003); *BKGTH Prods., LLC v. Does 1-20*, 2013 WL 5507297, at *4 (E.D. La. Sept. 30, 2013). The factors that are considered include the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests, and how far in advance of the typical discovery process the request was made. *BKGTH Prods., LLC*,

---

[6] Although a security bond is sometimes required as a condition to a court entering a preliminary injunction, it "is a matter for the discretion of the trial court; [the court] may elect to require no security at all." *See Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978). Because Plaintiff only seeks a brief injunction to enjoin the shareholder vote for only so long as necessary to allow Company shareholders to receive and absorb the supplemental disclosures, defendants will suffer minimal, if any, financial harm. Accordingly, Plaintiff respectfully submits that no bond should be required. *See New Orleans Home for Incurables, Inc. v. Greenstein*, 911 F. Supp. 2d 386, 413 (E.D. La. 2012) (declining to require a security where opposing party failed to present "evidence that it will be financially harmed if it were wrongfully enjoined.").

2013 WL 5507297 at *4 (quoting *St. Louis Group, Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239 n.4 (S.D. Tex. 2011).

Courts in this Circuit have recognized that expedited discovery would be appropriate in a case seeking a preliminary injunction, as Plaintiff does here. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.,* 344 F.Supp.2d 986, 991 (S.D. Tex. 2004); *Rodale, Inc. v. U.S. Preventive Med., Inc.*, No. 4:08-CV-120, 2008 WL 4682043, at *1 (E.D. Tex. Oct. 21, 2008). In fact, the Advisory Committee's notes to the 1993 amendments to Rule 26(d) expressly provide that discovery before the Rule 26(f) conference "will be appropriate in some cases, such as those involving requests for preliminary injunctions . . . ."

Here, good cause exists because Plaintiff's request for limited expedited discovery will enable Plaintiff to further develop the record in anticipation of the hearing on this motion for a preliminary injunction, which seeks to protect Akorn stockholders from suffering irreparable harm. Defendants will experience little, if any, harm from being required to produce documents which are certainly already in their possession and could be very easily gathered and disseminated. Thus, the Court should grant Plaintiff's motion for expedited discovery.

## B.  The PSLRA Does Not Preclude Plaintiff from Obtaining Expedited Proceedings and Discovery

Plaintiff anticipates that defendants may oppose the expedited relief requested through this Motion based on the Private Securities Litigation Reform Act of 1994 (the "PSLRA"). *See* 15 U.S.C.A. § 78u-4(b)(3)(B) ("In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."). However, the discovery stay provided

for by the PSLRA does not apply where, as here, preventing Plaintiff from further developing the record will result in irreparable harm to Plaintiff and all other Akorn stockholders.

First, the PSLRA's discovery stay applies only when a party has moved to dismiss a plaintiff's complaint. 15 U.S.C. § 78u-4(b)(3)(B). Here, Defendants have not moved to dismiss. Accordingly, the condition precedent to the PSLRA's discovery stay has not occurred, so there is no basis whatsoever to deny Plaintiff the ability to further build his case in anticipation of the hearing on his motion for injunctive relief.

Second, the PSLRA's discovery stay does not apply in situations where, as here, "particularized discovery is necessary to preserve evidence or to prevent undue prejudice" to a party. 15 U.S.C. § 78u-4(b)(3)(B). "Undue prejudice has been defined as improper or unfair treatment amounting to something less than irreparable harm." *Benbow v. Aspen Technology, Inc.*, No. Civ. A. 02-2881, 2003 WL 1873910, at *4 (E.D. La. Apr. 11, 2003). Thus, to the extent that Plaintiff has already demonstrated that, absent the requested relief, he faces the threat of irreparable harm, he has likewise shown he will be unduly prejudiced.

In addition, unfair prejudice has been found "where defendants might be shielded from liability in the absence of the requested discovery." *Vacold LLC v. Cerami*, No. 00-4024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001); *see also Global Intellicom, Inc. v. Thomson Kernaghan & Co.*, No. 99-cv-342, 1999 WL 223158, at **1-2 (S.D.N.Y. Apr. 16, 1999) (allowing the plaintiff corporation to obtain discovery related to the defendant's efforts to acquire the plaintiff, because the defendant's actions, if successful, would moot the plaintiff's claims). If the vote is held without expedited discovery, Plaintiff's right to a fully-informed decision will be forever frustrated. Because Plaintiff demands a non-monetary remedy, "the stage of preliminary injunctive relief, rather than post-contest lawsuits, is the time when relief

can best be given." *Piper v. Chris-Craft Indus.*, 430 U.S. 1, 42 (1977) (internal quotation marks omitted). Moreover, as noted above, "after-the-fact damages are not a precise or efficient method to remedy disclosure deficiencies." *Marie Raymond Revocable Trust v. Mat Five LLC*, 2008 WL 2673341, at *5 (Del. Ch. June 26, 2008).

Here, Plaintiff requests limited, particularized discovery to investigate Plaintiff's claims against Defendants and to develop the record in anticipation of Plaintiff's motion to preliminarily enjoin the forthcoming stockholder vote. Without such limited, expedited discovery, Plaintiff will be unable to protect Akorn stockholders from suffering the irreparable harm that will inevitably result from an uninformed vote. As Plaintiff has shown that all of Akorn's stockholders stand to suffer irreparable harm, Plaintiff has clearly satisfied the lesser showing of undue prejudice required to avoid the PSLRA's discovery stay.

In a strikingly similar circumstance, a court in the Fourth Circuit lifted the PSLRA stay and ordered the production of a particularized set of discovery documents in advance of an imminent shareholder vote on a proposed merger. *Malon v. Franklin Fin. Corp.*, 2014 WL 5795730, at *2-3 (E.D. Va. Nov. 6, 2014). There, the plaintiff alleged violations of a closely related Section of the Exchange Act, § 14(a), and sought expedited discovery and the lifting of the PSLRA stay. *Id*. at *1. The court granted both, lifting the PSLRA stay in anticipation of a motion for a preliminary injunction, and provided the plaintiff with limited expedited discovery. *Id*. at *2-3. The court acknowledged that the PSLRA stay would unduly prejudice stockholders if discovery could not occur before the irredeemable harm of an uninformed stockholder vote occurred. *Id*.

In another similar situation, the Federal District Court for the District of Columbia in *Ryan v. Walton*, No. 1:10-cv-00145-RMC (D.D.C. 2017) (Decl., Ex. 2), held that the PSLRA's

discovery stay would not operate to preclude expedited discovery in light of the fast-approaching stockholder vote. *Id*. at *4. The plaintiffs sought expedited discovery and a lift of the stay to facilitate a motion to enjoin a stockholder vote on the acquisition of Allied Capital Corporation. *Id*. at *1. In granting the plaintiffs' motion, the court accepted the plaintiffs' argument that prejudice would result from the irreparable harm which stockholders of Allied Capital Corporation would suffer if stockholders were unable to cast a fully informed vote on the merger. *See id*. Thus, the court ordered expedited discovery in order for the plaintiffs to be able to move for injunctive relief prior to the stockholder vote. *See id*.; *see also In re Royal Ahold N.V. Securities & ERISA Litigation*, 319 F. Supp. 2d 634, 635 (D. Md. 2004) (lifting PSLRA discovery stay where the plaintiffs "have shown that a delay in the production of the particularized discovery sought here would cause undue prejudice to their ability to litigate and, most significantly, resolve as expeditiously their claims against [the defendants]").

Plaintiff alleges federal claims based on Defendants' failure to provide stockholders with material information concerning the proposed acquisition. If Plaintiff is precluded from investigating his claims before the stockholder vote, Plaintiff and all other Akorn stockholders will suffer irreparable harm, which easily satisfies the undue prejudice needed to avoid the PSLRA's discovery stay. Based thereon, the Court should permit expedited discovery.

### B. Plaintiff's Requests Are Limited in Scope and Will Impose Minimal Burden on the Defendants

Plaintiff seeks only limited production of documents from Defendants and key third parties, as well as depositions of just one key individual from Akorn and J.P. Morgan necessary to evaluate the adequacy of Defendants' disclosures, in anticipation of filing his motion for a preliminary injunction. As they pertain to the Proposed Transaction, these documents are likely

readily available and able to be produced without much effort and cost. Specifically, Plaintiff seeks the following limited discovery for the time period of August 2016 to the present:

- The meeting minutes, with attachments and materials reviewed at the meetings, of the Company's Board of Directors and all committees thereof, insofar as the materials relate to the Proposed Transaction (or any other offer, merger or strategic transaction involving Akorn and/or a shareholder of Akorn), including, but not limited, to presentations made to the Board by J.P. Morgan in connection with the Proposed Transaction;

- All formal correspondence (including proposal letters, responses, confidentiality agreements, employment agreements, and the like) between Akorn (including its officers and directors) and any potential merger partner concerning a potential strategic transaction and any related subject matter;

- All financial projections given to, or received from, J.P. Morgan relating to the Proposed Transaction or a business combination with any other possible acquirer of Akorn and/or shareholder of Akorn;

- The deposition of a Board member; and

- The deposition of a representative from J.P. Morgan, which was the Company's primary financial advisor in connection with the Proposed Transaction.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests: (i) that the Court issue a preliminary injunction enjoining Defendants from proceeding with the July 19, 2017 stockholder vote and (ii) that the Court direct Defendants to respond to Plaintiff's request for expedited discovery.

Dated: June 26, 2017                  Respectfully submitted,

/s/ Lewis S. Kahn_____
Lewis Kahn, Esq. (23805)
Kahn Swick & Foti, LLC
206 Covington Street
Madisonville, La 70447
Telephone:    (504) 455-1400
Cellular:      (504) 301-7900
Facsimile:    (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Plaintiff*


**OF COUNSEL**

**BROWER PIVEN**
  A Professional Corporation
Daniel Kuznicki
(to seek *pro hac vice* admission)
475 Park Avenue South, 33rd Floor
New York, New York 10016
Telephone: 212-501-9000
Cellular: 347-690-0692
kuznicki@browerpiven.com

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on June 26, 2017, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Courts electronic filing system. All other parties will be served by electronic means pursuant to F.R.C.P. 5(b)(2).


<u>/s/ Lewis S. Kahn</u>