**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHAUN A. HOUSE, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5018 |
| ROBERT CARLYLE, | |
| Plaintiff, | No. 17 C 5022 |
| DEMETRIOS PULLOS, individually and on behalf of all other similarly situated, | |
| Plaintiff, | No. 17 C 5026 |
| v. | Judge Thomas M. Durkin |
| AKORN, INC.; JOHN N. KAPOOR; KENNETH S. ABRAMOWITZ; ADRIENNE L. GRAVES; RONALD M. JOHNSON; STEVEN J. MEYER; TERRY A. RAPPUHN; BRIAN TAMBI; ALAN WEINSTEIN, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Six named plaintiffs each filed an action against Akorn, Inc. and members of Akorn's board of directors in order to force Akorn to make certain revisions to the proxy statement it filed with the U.S. Securities and Exchange Commission in connection with Frensenius Kabi AG's bid to acquire Akorn. Akorn made the changes to its proxy statement, which plaintiffs conceded mooted their claims, and led them to stipulate to dismissal without prejudice of all six cases pursuant to Federal Rule

of Civil Procedure 41(a)(1). Although five of the six cases were filed as class actions, the cases were voluntarily dismissed before any class was certified or any motion for class certification was filed.

In the one of the six cases originally assigned to this Court, the motion seeking entry of a stipulation of dismissal provided that the Court would "retain[] jurisdiction over all parties solely for the purposes of . . . any claim by any Plaintiff . . . for attorneys' fees and/or expenses." 17 C 5016, R. 54 at 1. Two months later, on September 15, 2017, the parties in that case filed another stipulation providing that the plaintiffs in all six cases had reached a settlement agreement with Defendant providing for $322,500 in attorneys' fees, and that "there being no reason for the Court to retain jurisdiction over this matter, the case should be closed for all purposes." 17 C 5016, R. 56 at 6.

Three days later, before the Court could take any action with respect to the September 15 proposed order, Theodore Frank, an owner of 1,000 Akorn shares, filed motions to intervene in all six cases for purposes of objecting to the attorneys' fee settlement.[1] Frank contends that the cases are part of a "racket," known as "strike suits," pursued "for the sole purpose of obtaining fees for the plaintiffs' counsel," 17 C 5016, R. 66-2 at 1, which are successful "because victim defendants [like Akorn] find it cheaper, and therefore rational, to pay nuisance value attorneys' fees rather than contest them," 17 C 5016, R. 79 at 1, and further delay the merger. Frank contends

---

[1] 17 C 5016, R. 57; 17 C 5017, R. 36; 17 C 5018, R. 35; 17 C 5021, R. 36; 17 C 5022, R. 26; 17 C 5026, R. 20.

2

that this is a "misuse of the class action device for private gain." 17 C 5016, R. 66-2 at 6. Frank's motion relies on the Seventh Circuit's decision in *In re Walgreen Co. Stockholder Litig.*, holding that analysis under Rule 23 of the fairness of a settlement of strike suit claims must consider whether the demanded changes to the proxy statement are "plainly material" such that the class derived a benefit supporting payment of attorneys' fees. 832 F.3d 718, 725 (7th Cir. 2016).

Frank also sought to consolidate all six cases before this Court. 17 C 5016, R. 67. The Court withheld ruling on that motion. 17 C 5016, R. 75. Proceedings on Frank's motions in the five other cases paused while this Court addressed Frank's motion to intervene in the case before it (17 C 5016) (following this district's custom that proceedings in the case with the lowest number take precedence when appropriate). The Court denied Frank's motion, finding that Frank had failed to identify an interest in the case upon which his intervention could be based. 17 C 5016, R. 81 (*Berg v. Akorn*, 2017 WL 5593349 (N.D. Ill. Nov. 21, 2017)). Because the Court was "concerned with [the plaintiff's] apparent success in evading the requirements of Rule 23," the Court invited Frank to file a motion to reconsider addressing the questions the Court raised in its opinion denying intervention. R. 81. Frank filed a renewed motion for intervention arguing that plaintiffs' counsel had breached their fiduciary duties to the putative class by abusing the class mechanism to "extort" attorneys' fees from Akorn, which were against the class members' interests as shareholders of Akorn. 17 C 5016, R. 83.

3

Whether in light of Frank's renewed motion, or possibly because the Akorn-Frensenius merger had failed and devolved into litigation, or for some other reason entirely, plaintiffs' counsel in three of the six cases disclaimed attorneys' fees and sought to withdraw their representations.[2] At subsequent status hearings, the Court explained that, rather than consolidate all six cases, the Court would recommend to the district's executive committee that the five other cases be reassigned to this Court. 17 C 5016, R. 97, R. 99. Anticipating reassignment, the Court ruled that Frank's motions to intervene in the three cases in which counsel had disclaimed fees were moot,[3] and that the Court's original denial of Frank's motion to intervene, and his motion for reconsideration, were deemed to be filed in all three of the remaining cases,[4] with continued briefing being filed in case 17 C 5018. Remaining counsel filed a joint brief in opposition to Frank's motion for reconsideration, 17 C 5018, R. 50, and Frank filed a reply, 17 C 5018, R. 51. The Court now turns to that motion.

As mentioned, Frank's primary argument for intervention is that he has stated a claim against plaintiffs' counsel for breach of fiduciary duty. It is true that counsel who file a case as class action have a fiduciary duty to the putative class even before it is certified. *See Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 830 (7th Cir. 2011) (the named plaintiff in a putative class action "has a fiduciary duty to its fellow class members. A representative can't throw away what could be a major component of the class's recovery."); *Laguna v. Coverall N. Am., Inc.*, 753 F.3d 918,

---

[2] 17 C 5016; 17 C 5017; 17 C 5021.

[3] 17 C 5016, R. 103; 17 C 5017, R. 55; 17 C 5021, R. 56.

[4] 17 C 5018, R. 47; 17 C 5022, R. 32; 17 C 5026, R. 27.

4

928 (9th Cir. 2014) ("[W]here the settlement agreement is negotiated prior to final class certification, [t]here is an even greater potential for a breach of fiduciary duty owed the class during settlement." (quoting *In re Bluetooth Headset Products Liability Litigation,* 654 F.3d 935, 946 (9th Cir. 2011))). But the authority setting forth such a duty indicates that it is limited to protecting class members' legal rights that form the basis of the claims at issue. *See Schick v. Berg*, 2004 WL 856298, at *6 (S.D.N.Y. Apr. 20, 2004) (holding that "pre-certification class counsel owe a fiduciary duty not to prejudice the interests that putative class members have in their class action litigation" because "class counsel acquires certain limited abilities to prejudice the substantive legal interests of putative class members even prior to class certification"); *see also* Nick Landsman-Roos, *Front-End Fiduciaries: Precertification Duties and Class Conflict*, 65 STAN. L. REV. 817, 849 (2013). In other words, class counsel have a duty not to act in a manner that prejudices class members' ability to secure relief for the alleged injuries at issue in the case.

Frank does not claim that plaintiffs' counsel caused any such prejudice. Rather, he alleges that the attorneys' fees paid to class counsel are a loss to Akorn and thereby harmed Akorn shareholders, including the class members. *See* 17 C 5018, R. 51 at 4 ("Settling Counsel breached their duty through their scheme to extract attorneys' fees through sham litigation diametrically opposed to the interests of class members they purported to represent."). Frank makes no allegation that plaintiffs' counsel prejudiced the class members' claims in any of the six cases. In fact, Frank's underlying rationale for seeking to intervene is that plaintiffs' claims are worthless,

5

which would mean that class members are not entitled to any recovery. It is difficult to see how worthless claims could ever be prejudiced.

Moreover, the injury Frank identifies is not to the class members *qua* class members. Rather, it is an injury to *Akorn* that the class members might realize through their shares of Akorn. But an injury to Akorn can only be pursued by class members through a derivative action, which is not the procedural posture of any of the six cases. And in any event, the fact that all the class members are Akorn shareholders does not mean that plaintiffs' counsel's fiduciary duty to the putative class extends to a duty to refrain from injuring Akorn. Indeed, plaintiffs' claims are designed to compel Akorn to act in a way it otherwise had not, thereby causing some form of expense and injury. Clearly, the class members' claims and Akorn's interests are not coextensive. As such, there is a break in the causal chain connecting the class members to Akorn that Frank relies upon to support his theory of intervention.

It is unsurprising that Frank must rely on injury to Akorn and cannot identify any prejudice to the class members since no class was ever certified and the claims were dismissed without prejudice. Without a certified class, Rule 23's mechanism for judicial review of class settlements is inapplicable. Judicial review under Rule 23 formerly applied to a settlement with a putative class pre-certification, but the Rule was revised in 2003 to limit judicial review to certified classes. Frank argues that plaintiffs' counsel's fiduciary duty to the putative class is a basis to disgorge the settlement fees. But the cases he cites in support of this argument either predate the relevant amendments to Rule 23, *see Culver v. City of Milwaukee*, 277 F.3d 908, 913

6

(7th Cir. 2002); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 776 (3d Cir. 1995), or address settlements that were binding on the class members despite the fact that no class had been certified, *see Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006); *Grok Lines, Inc. v. Paschall Truck Lines, Inc.*, 2015 WL 5544504, at *2 (N.D. Ill. Sept. 18, 2015)—in other words, at least some of the class members' claims or rights to relief had been released, establishing an equitable basis for them to demand a fair portion of the settlement. Neither circumstance is present here, so the Court will not permit Frank to intervene as a party.

However, the Seventh Circuit has clearly and repeatedly stated that attorneys' fees awards for disclosure suits like this are generally "no better than a racket" that "should be dismissed out of hand," unless the disclosures achieved are "plainly material." *Walgreen*, 832 F.3d at 724, 725; *In re Subway Footlong Sandwich Mktg. and Sales Prac. Litig.*, 869 F.3d 551, 557 (7th Cir. 2017); *see also Bushansky v. Remy Int'l, Inc.*, 262 F. Supp. 3d 742 (S.D. Ind. 2017) (rejecting settlement pursuant to *Walgreen* standard). These decisions came in the context of review of settlements under Rule 23, and as discussed, Rule 23 is inapplicable here. Nevertheless, the suggestion that such cases "should be dismissed out of hand" indicates that the Seventh Circuit believes that courts should not permit plaintiffs' counsel to file cases purely to exact attorneys' fees from corporate defendants under any circumstances. *See Pearson v. Target Corp.*, 893 F.3d 980, 982 (7th Cir. 2018) (counsel and parties should not be permitted to "leverage" the class mechanism "for a purely personal

7

gain"). Accordingly, the Court will exercise its inherent powers to police potential abuse of the judicial process—and abuse of the class mechanism in particular—and require plaintiffs' counsel to demonstrate that the disclosures for which they claim credit meet the *Walgreen* standard. *See Dale M., ex rel. Alice M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 986 (7th Cir. 2002) ("[A]ll courts possess an inherent power to prevent unprofessional conduct by those attorneys who are practicing before them. This authority extends to any unprofessional conduct, including conduct that involves the exaction of illegal fees."). Failure to demonstrate compliance with *Walgreen's* "plainly material" standard will result in the Court ordering plaintiffs' counsel to disgorge the attorneys' fees back to Akorn.

Although the Court has denied Frank's motion to intervene, the Court invites him to continue to participate in this case as an amicus curiae, because the Defendants have abandoned the adverse perspective necessary for the Court to determine this issue. *See Eubank v. Pella Corp.*, 753 F.3d 718, 720 (7th Cir. 2014) ("[U]nfortunately American judges are accustomed to presiding over adversary proceedings. They expect the clash of the adversaries to generate the information that the judge needs to decide the case. And so when a judge is being urged by both adversaries to approve the class-action settlement that they've negotiated, he's at a disadvantage[.]").[5] In the prior briefing, plaintiffs' counsel made arguments as to why

---

[5] In *Walgreen*, Judge Posner suggested that in circumstances such as these the district court could appoint an independent expert pursuant to Federal Rule of Evidence 706. The Court makes no ruling as to the necessity of expert reports on the

certain disclosures met the *Walgreen* standard. Frank only briefly addressed these issues, as they were not immediately relevant to his motion to intervene. The Court requires further briefing to address this issue. Plaintiffs' counsel should file a brief of no more than fifteen pages in support of their position by November 1, 2018, including addressing the arguments Frank has already made that the disclosures are not plainly material. Frank may then file a brief of no more than fifteen pages in response by December 3, 2018. Defendants may also file a brief stating their position by November 1, 2018.

In sum, Frank's motion for reconsideration is denied in part and granted in part.[6] He is not granted leave to intervene as a party. But his motion is granted insofar as the Court will exercise its inherent authority to apply the standard set forth by the Seventh Circuit in *Walgreen* to the settlement at issue in this case, and Frank is granted leave to file a brief as an amicus curiae as described above. Frank should file a notice in case 17 C 5018 by October 1, 2018, stating whether he will accept the Court's invitation to participate as amicus curiae.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: September 25, 2018

---

issue of materiality, and does not foreclose the issue at this time. Frank is simply invited to make legal argument in opposition to plaintiffs' counsel's positions.

[6] For purposes of the docket, this means that Frank's motions R. 35 in 17 C 5018, and R. 26 in 17 C 5022, are denied in part and granted in part.